SHAHOOD, J.
We affirm the Public Employees Relations Commission’s (PERC) final order upholding the termination of appellant, Faye Wright-Simpson, from her employment with the Department of Corrections (Department).
Prior to her dismissal from the Department, Wright-Simpson filed a discrimination lawsuit against the Department in federal court. In her complaint, Wright-Simpson alleged that the Department retaliated against her in violation of Title VII for her participation in a prior discrimination case.
The Department moved for summary judgment arguing that Wright-Simpson’s federal case should be dismissed becausé she had not suffered any adverse employment action and that despite her assertions of an abnormally high caseload, there was no evidence to suggest that she had to work extra hours to-keep up her increased workload.
In response, Wright-Simpson filed a rebuttal affidavit claiming that she had an excessive number of high risk cases assigned to her and that despite her requests for assistance, the Department refused to assign another' specialist. Wright-Simpson claimed that she had to work an extra five hours per week in overtime without pay in order "to maintain her increased caseload. Wright-Simpson maintained that she was owed in excess of $10,000 in salary for overtime hours during the time period from March 2001 to April 2002.
The Department stated that this was the first time Wright-Simpson ever indicated that she was required to work overtime for which she had not been paid. Further, a review of her timesheets, which had been certified by Wright-Simpson to be true and correct, did not reflect any overtime. As a result, the Department commenced an investigation and stated in , an affidavit that: é
If, as Ms. WrighWSimpson now contends. in her sworn affidavit, that she actually worked an average of five hours overtime per week which is not reflected on her signed and certified, time sheets, that would mean that her time sheets are not “true and correct” as she.personally certified to her employer when she submitted them. This would be a violation of DOC policy and procedure. Alternatively, if Ms. WrighWSimpson’s ■time records are “true and correct” as she certified to her employer when she submitted them, then her sworn affidavit submitted in this civil lawsuit would be inaccurate and untrue.
The Department asserted that Wright-Simpson’s caseload was not significantly higher than any other comparable officer in the district in which she worked and *1124 that her timesheets did not reflect any overtime worked by her during the relevant time period. The Director of Human Resources for the Department affirmed that Correctional Probation Officer Specialists were not allowed to work more than forty hours per week without requesting and getting paid for overtime. If an officer could not complete her work in a timely manner and needed overtime in order to do so, the officer was required to discuss the situation with a supervisor.
Following the results of its investigation, the Department notified Wright-Simpson that she was being dismissed from her position as a correctional probation specialist. The Department’s final action letter advised Wright-Simpson that she was being discharged for refusing to answer questions specifically related to her official duties, negligence, falsification of forms or records, conduct unbecoming a public employee, willful violation of rules, regulations, directives or policy statements, giving false testimony and failure to follow oral or written instructions.[1] As the basis for the dismissal, the Department stated:
Specifically, on or about April 1, 2003, Human Resource Analyst Margaret Chrisawn discovered that you had claimed in an Affidavit submitted to the United States District Court regarding personal litigation that you had worked an average of five (5) hours per week of overtime without being paid during the period from March 2001 to April 2002. However, a review of your Department of Corrections Attendance and Leave Reports for this period disclosed that you did not report and/or work the claimed overtime, even though said reports contained your signature certifying that they represented a true and correct record of your hours worked. As a result, Ms. Chrisawn reported this information to the Office of the Inspector General and an investigation was initiated. On May 1, 2003, Correctional Officer Senior Inspector Paul Bowdre of the Office of the Inspector General attempted to conduct an interview with you regarding this matter. However, you repeatedly refused to answer questions posed to you which were directly related to your submission of the referenced Attendance and Leave Reports and working overtime, citing your pending litigation and the advice of an unidentified attorney as the reasons. The basis for these charges is contained in Investigation No. 03-31079 conducted by Inspector Bowdre, a copy of which was already provided to you with my letter of June 18, 2003.
Following an evidentiary hearing, the hearing officer found that Wright-Simpson did not report her alleged overtime on her timesheets, that there was no evidence that she was unable to handle her caseload, that she never requested authorization for overtime, and that she did not inform her supervisors that she was working overtime in order to complete her work. The hearing officer concluded that WrighWSimpson did not work overtime as she alleged and that she submitted true and correct timesheets during the relevant period. Thus, the Department did not prove that Wright-Simpson falsified her timesheets. The hearing officer then went on to conclude that the Department “did not charge her with making any other false statements.”
The Department filed the following exception to the hearing officer’s recommended order:
*1125 The hearing officer finds that Ms. Simpson did not in fact work overtime and, thus, her timesheets had not been falsified. This finding represents a de facto finding that Simpson falsified her affidavit in her federal case wherein she alleged that the Department owed her $10,000 because she had worked overtime of five hours/week for over one year without being paid. Although the Department agrees with the findings of fact made by the hearing officer, the Department must respectfully except to the conclusion that Simpson had not been charged with any violation relative to her federal filings and thus, cause had not been shown to discipline her for this false fifing. The Department submits that the final action letter reasonably implies that the charges are that Simpson either perjured herself by fifing a false affidavit in the federal court or she falsified her timesheets.
This entire case arose because of the inconsistency between the timesheets and the federal fifing. This inconsistency was clearly set forth in the final action letter. The Department should not be penalized because the hearing officer chose to believe that falsification of the federal fifing had occurred rather than falsification of the timesheets. It should also be noted that the presentation of the evidence at the hearing and the proposed recommended order submitted by the Department are all consistent with the either/or scenario spelled out above. There was no surprise or disadvantage to the Employee regarding the Department’s contention that either perjury in federal court or falsification of timesheets had occurred. Clearly, the charge of conduct unbecoming and falsification of forms are both supported by the findings of fact made by the hearing officer.
PERC remanded the matter for the hearing officer to consider that portion of the final action letter which alleged that Wright-Simpson falsified her affidavit filed in federal court which stated that she worked overtime without being paid from March 2001 to April 2002.'
In a supplemental recommended order, the hearing officer again concluded that because Wright-Simpson submitted true and correct timesheets between the relevant period which did not claim overtime, the Department did not have cause to discipline her for falsifying her timesheets. However, the hearing officer concluded that because Wright-Simpson did not work overtime during the relevant period, she intentionally filed a false affidavit in federal court in order to show that she incurred economic damages in her Title VII claim. Accordingly, the Department had cause to discipline Wright-Simpson for conduct unbecoming a public employee.
WrighNSimpson filed exceptions to the recommended orders, which PERC denied. PERC upheld the hearing officer’s findings and conclusions and dismissed Wright-Simpson’s appeal.
We reject WrighNSimpson’s claim that the final action letter issued by the Department failed to apprise her that she was being charged with violations of rules and regulations relative to the fifing of a false affidavit in federal court.
In determining whether an employee has been reasonably informed of the charges against him by the language contained in a predetermination and final action letter, PERC does not require the strict, fine precision required of pleadings of courts; rather, the standard is whether the letters are clear enough to apprise an employee of the proposed action and the facts upon which it hinges. See Schindler v. Dep’t of Children & Families, 15 FCSR 454 (2000); Shuler v. Dep’t of Health & Rehabilitative Servs., 3 FCSR ¶ 051 *1126 (1988), affirmed, 538 So.2d 1256 (Fla. 1st DCA 1989). Notices of this sort in administrative proceedings are not required to meet technical niceties or formal exactness as required of pleadings in the courts. See Smith v. Dep’t of Health & Rehabilitative Servs., 555 So.2d 1254, 1256 (Fla. 3d DCA 1989) (PERC correctly rejected the hearing officer’s legal conclusion that the charge against Smith was legally insufficient. The notice filed herein was specific enough to inform the employee with reasonable certainty of the nature of the charges against her).
In the final action letter, Wright-Simpson was notified that she was being dismissed for refusing to answer questions specifically related to her official duties, negligence, falsification of forms or records, conduct unbecoming a public employee, willful violation of rules, regulations, directives or policy statements, giving false testimony and failure to follow oral or written instructions. The letter highlighted that an investigation was initiated by the Inspector General after it was discovered that Wright-Simpson had claimed in an affidavit filed in federal court that she worked five hours per week in overtime without being paid during the period of March 2001 through April 2002. A review of Wright-Simpson’s attendance and leave reports reflected no overtime claimed by WrighWSimpson and was attested to by Wright-Simpson to be true and correct records of her hours worked.
Wright-Simpson was charged with violating “Department of Corrections Rules, Chapter 33-208.002(1), (4)(a), (7), (11), (13), (20); Chapter 33-208.003(13), (21), (22), (24), (28), (32), F.A.C., and the Rules of the Department of Management Services, Personnel Management System, Chapter 60L-36.005(3)(b), (e), (f), (g).”
Department of Corrections Rules 33-208.002, Florida Administrative Code, provides in part that “[t]he Department of Corrections requires all employees to familiarize themselves with all rules and regulations pertaining to their positions and duties, and that employees abide by these rules and regulations.” The applicable rules of conduct included that: no employ^ ee refuse to truthfully answer questions specifically relating to the performance of his or her official duties; no employee be insubordinate, neglectful, or unwilling to follow lawful orders or perform officially designated duties; no employee falsify reports or records; and no employee knowingly submit inaccurate or untruthful information for or on any Department of Corrections record, report or document. Fla. Admin. Code R. 33-208.002(1), (4)(a), (7), (11), (13), (20).
Department of Management Services, Personnel Management System Rule 60L-36.005, Florida Administrative Code, provides that permanent career service employees may be suspended or dismissed for cause for violations which include: negligence; violation of law or agency rules; conduct unbecoming a public employee; and misconduct. Fla. Admin. Code R. 60L-36.005(b), (e), (f), (g).
From the contents of the letter and the above rule violations, Wright-Simpson was clearly placed on notice that she either falsified her timesheets or the affidavit she filed in federal court, that such inconsistency resulted in an investigation commenced by the Department, and that she failed to answer questions relating to her work attendance. Accordingly, Wright-Simpson had notice apprising her of the action against her and the facts upon which the action hinged.
Clearly, the action taken against WrighWSimpson was in keeping with the hearing officer’s conclusion in her supplemental recommended order that the Department proved by a preponderance of the evidence that it had cause to discipline *1127 Wright-Simpson for conduct unbecoming a public employee. Accordingly, PERC did not abuse its discretion in upholding Wright-Simpson’s dismissal.
AFFIRMED.
FARMER, C.J., and GREENE, CHARLES M., Associate Judge, concur.

. The letter further sets forth the various Department rules which were violated by Wright-Simpson's conduct.