# Third District Court of Appeal

## State of Florida

Opinion filed May 31, 2017.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D16-2312
Lower Tribunal No. 15-132
_____

## Douglas Krieger,
Appellant,

vs.

## Florida Fish and Wildlife Conservation Commission,
Appellee.

An Appeal from the Florida Public Employee Relations Commission.

Law Offices of Slesnick and Casey, LLP and James C. Casey, for appellant.

Brandy E. Elliott (Tallahassee), for appellee.

Before LOGUE, SCALES, and LUCK, JJ.

LUCK, J.

Douglas Krieger, a former law enforcement officer with the state fish and wildlife commission, was fired for insubordination. Krieger appeals the final order of the public employees relations commission terminating him because his pre-

termination due process rights were violated, his supervisor's order that formed the basis of the insubordination charge was vague, and termination was not an appropriate remedy under the fish and wildlife commission's regulations. We disagree, and affirm.

*Factual Background and Procedural History*

The fish and wildlife commission hired Krieger as a law enforcement officer on September 10, 2012. In November 2014, Lieutenant Michael Haney, Krieger's direct supervisor, observed Krieger "sitting idle" at John Pennekamp Coral Reef State Park. Subsequently, on December 4, 2014 and on January 9, 2015, Lt. Haney instructed Krieger to patrol the southern portion of their patrol zone (from Whale Harbor to Vaca Cut). He further advised the entire squad, and Krieger one-on-one, not to enter Pennekamp unless they received a call to service or an officer requested assistance. Lt. Haney also went on patrol with Krieger and observed first-hand that Krieger was not properly performing his duties (i.e. issuing warnings and citations).

After the January 9 meeting, Lt. Haney began to more closely monitor Krieger's work activities and discovered that Krieger continued to enter Pennekamp in direct contravention of Lt. Haney's January 9 order. On January 30, Lt. Haney responded to an electronic mail message from Krieger requesting clarification of the January 9 order. Lt. Haney reiterated that Krieger was "not to

be in Pennekamp unless [he] receive[d] a call for service or an officer request[ed] assistance" and, upon starting his shift, he was "to proceed directly to the boat and patrol the south end of [the] zone."

On February 10, Lt. Haney emailed Major Roger Beaton, his supervisor, regarding Krieger's failure to obey orders and work performance. The following day, Lt. Haney filed a complaint against Krieger with the fish and wildlife commission's inspector general's office, alleging "that Krieger engaged in numerous instances of loafing and insubordination, [was] inefficient or unable to perform his job duties, violated policies procedures and General Orders and falsified records."

The inspector general's office reviewed Krieger's personnel records, his activity reports, the records from the computer dispatch system, the global positioning device on his service vehicle and boat, the radio logs, and surveillance video from Pennekamp in determining Krieger's whereabouts and work performance from October 20, 2014 to April 7, 2015.[1] The investigation, completed on June 5, 2015, sustained all allegations against Krieger as "supported by proper and sufficient evidence."

---

[1] All of this information was introduced into evidence at the administrative hearing, and formed a large part of the hearing officer's findings of fact and conclusions of law that were adopted by the public employees relations commission.

On September 4, the fish and wildlife commission sent Krieger a pre-determination notice explaining its intention to terminate him. The letter listed specific rule violations, allegations of insubordination, and facts upon which his intended termination was based. The letter, specifically, identified dates and times when Krieger acted in direct contravention of the orders: (1) not to go into Pennekamp unless he received a call for service or an officer requested assistance; and (2) "to concentrate [] water patrol on the south end of the patrol zone." On September 24, the fish and wildlife commission held a pre-determination hearing with Krieger.

On October 27, the fish and wildlife commission terminated Krieger's employment for insubordination because he failed to: refrain from patrolling Pennekamp; and patrol the southern portion of his patrol zone from Whale Harbor to Vaca Cut. Krieger appealed his termination to the public employees relations commission. After a four-day evidentiary hearing, the hearing officer recommended dismissal of Krieger's appeal. The public employees relations commission overruled Krieger's exceptions to the findings of fact and conclusions of law of the hearing officer, and adopted his recommendation. This appeal followed.

*Standard of Review*

4

The public employees relations commission's "order must be affirmed if it and the underlying hearing officer's judgment are supported by competent substantial evidence." Declet v. Dep't of Children & Families, 776 So. 2d 1000, 1001 (Fla. 5th DCA 2001). We do "not substitute our judgment for that of the agency as to the weight of evidence on any disputed finding of fact. We may only set aside such action or remand the case to the agency if we find the agency's order depends upon any finding of fact which is not supported by competent substantial evidence in the record. It is not . . . our province to displace an agency's choice between two conflicting views even if we would be justified in deciding the issue differently were it before us in the first instance." Pasco Cty. Sch. Bd. v. Fla. Pub. Employees Relations Comm'n, 353 So. 2d 108, 116 (Fla. 1st DCA 1977).

*Analysis*

On appeal, Krieger challenges the public employees relations commission's decision to dismiss his appeal. Krieger contends that it erred: (1) in determining that his due process rights were not violated even though the fish and wildlife commission terminated him for reasons not provided in the pre-determination letter; (2) in concluding that he was insubordinate for not patrolling the area south of Whale Harbor because the order for his supervisor was vague; and (3) in terminating him rather than putting him on a performance improvement plan as called for in the fish and wildlife commission's regulations.

5

1. <u>Pre-determination letter</u>. Kreiger contends, first, that his due process rights were violated because the fish and wildlife commission terminated him for reasons that it did not disclose in its pre-determination letter. In <u>Cleveland Board of Education v. Loudermill</u>, 470 U.S. 532 (1985), the United States Supreme Court held that due process requires that the public employee, who has a property interest in continued employment, be given an informal pre-determination hearing. <u>Loudermill</u>, 470 U.S. at 545. The Court explained:

> The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement. The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.

<u>Id.</u> at 546 (citations omitted).

For two reasons, Krieger's <u>Loudermill</u> due process rights were not violated. First, the charges against Krieger in the fish and wildlife commission's pre-determination and termination letters are, in fact, the same. The termination letter merely provided additional dates on which Krieger violated the orders from his superiors to refrain from entering Pennekamp and to patrol the southern portion of his patrol zone. The fish and wildlife commission does not violate an employee's due process rights by giving more detail and explanation in the termination letter than it did in the pre-determination letter. Indeed, it makes sense that there would

6

be more detail in the termination letter after having the opportunity to hear from the employee at the pre-determination hearing.

Second, the law does not require that the pre-determination and termination letters contain "the strict, fine precision required of pleadings of court." Wright v. Simpson, 891 So. 2d 1122, 1125 (Fla. 4th DCA 2004). Instead, to determine "whether an employee has been reasonably informed of the charges against him by the language contained in a predetermination and final action letter . . . the standard is whether the letters are clear enough to apprise an employee of the proposed action and the fact upon which it hinges." Id. Here, both letters contain extensive detail to reasonably inform Krieger of the charges against him.

Kreiger, at bottom, received what Loudermill requires: notice of the charges; an explanation of the evidence against the employee; and an opportunity for the employee to present his side of the story. 470 U.S. at 546 ("The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story."); Hous. Auth. of City of St. Petersburg v. White, 617 So. 2d 717, 720 (Fla. 2d DCA 1993) ("The employee simply is entitled pretermination to notice of the charges against him, an explanation of the employer's evidence, and an opportunity to respond."). Over the course of nine months, Krieger was repeatedly apprised, both orally and in writing, of problems with his job performance. On

7

January 9, for example, Krieger was informed in a one-on-one meeting with Lt. Haney that he was underperforming, not to go to Pennekamp, to document every violation with a written warning, and to patrol the southern portion of the patrol zone. Lt. Haney even had Krieger's vessel moved to Whale Harbor from Pennekamp. On February 18, both Lt. Haney and Maj. Beaton provided Krieger with a memorandum of understanding, listing his job expectations and again directing him to patrol the southern portion of the zone. On April 29, Krieger was interviewed as part of the inspector general's investigation and, on June 5, 2015, the inspector general's office released its report with exhibits documenting Krieger's work activity during the relevant time period. Exhibits from the June 5 report specifically listed the dates at issue. Krieger, again, was informed of these issues in the pre-determination letter and afforded a pre-determination hearing before the fish and wildlife commission made its final termination decision. Anything "more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." Loudermill, 470 U.S. at 546.

2.      Vague order.  Krieger, next, contends that the order requiring him to patrol the southern part of his patrol zone was vague, and therefore, he could not be insubordinate for violating it.  A review of the various orders to patrol the southern zone demonstrates that they were not vague.

8

On December 4, 2014, Lt. Haney, Krieger's first-line supervisor, instructed the squad to patrol the non-state park areas of their zone, particularly the southern portion of the zone. On January 9, 2015, Lt. Haney told Krieger to concentrate his boat patrol on the south end of his patrol zone, from Whale Harbor to Vaca Cut. On January 30, Lt. Haney, again, ordered Krieger, this time by electronic mail, to proceed directly to his boat and patrol the south end of the patrol zone. The February 18, 2015, memo from Maj. Beaton also instructed Krieger to "[p]atrol lower portion of the Zone from Whale Harbor to Vaca Cut as directed." Krieger conceded during his testimony before the hearing officer that Lt. Haney directed him to get on his boat and patrol south from Whale Harbor to Vaca Cut.

The fish and wildlife commission presented competent, substantial evidence that Krieger was insubordinate in following these orders. Between January 10, 2015 and April 7, 2015, Krieger was on water patrol for forty-five days. On twenty-five of those days, more than half, Krieger did not patrol in his boat the area south of Whale Harbor Station. On four other days, Krieger's boat patrol in the southern part of his zone was for less than an hour. In total, of the 452 hours that Krieger worked from January through April of 2015, only fifty-seven hours, or twelve percent, of his time was spent patrolling south of Whale Harbor Station. Moreover, even when Krieger patrolled south of Whale Harbor Station, he never went further south of Long Key State Park, which was the halfway point of the

southern portion of his patrol zone. In other words, Krieger, for four months, did not patrol half of the area he was repeatedly directed to patrol. This was inconsistent with, and insubordinate to, the orders Krieger received from his supervisors.

3.    Improper remedy. Krieger contends, finally, that the charges against him were performance problems rather than ones of insubordination, and consistent with fish and wildlife commission regulations, he should have been given a performance improvement plan instead of being terminated. The fish and wildlife commission defines insubordination as "the deliberate and inexcusable refusal to comply with a reasonable order or directive, either written or oral, which relates to the employees['] job." Krieger's failure to follow his supervisor's orders to patrol the southern zone of his patrol area, and not enter Pennekamp, fell squarely within this definition.

The public employees relations commission found – and those findings were supported by competent, substantial evidence – that Krieger was repeatedly ordered to patrol in his boat the southern portion of his patrol zone, and not to enter Pennekamp. The public employees relations commission also found – and those findings were supported by competent, substantial evidence, too – that Krieger did not patrol the southern zone and continued to enter Pennekamp. Krieger violated these written and oral orders related to his job even after he was initially warned,

10

and then warned by electronic mail, and then warned in a one-on-one meeting with his supervisors. There were, in addition, inconsistencies between what Krieger reported to his supervisors, and the data from the GPS device on his boat; the data showed Krieger was doing less than what he reported.

Krieger argues that "[m]isconduct does not include discipline that is issued by a supervisor based solely on the performance of the employee's duties." Indeed, that is so. Krieger, however, was not terminated because he did not live up to his supervisor's standards in performing his official duties. Krieger, instead, was terminated because he failed completely to perform his official duties, even after he was reminded three times. He didn't perform at all. The record supports the public employees relations commission's conclusion that Krieger was insubordinate.

Pursuant to the fish and wildlife commission's regulations, termination is an appropriate remedy for insubordination. The public employees relations commission weighed the mitigating evidence presented by Krieger in favor of a lesser sanction against the evidence of his insubordination, and concluded that termination was the appropriate remedy:

> The insubordination of a law enforcement officer, like Krieger, to lawful orders of his supervisors is a serious matter. Krieger's violation of the reporting requirements of General Order 63 is also serious because the Agency needs to collect that information to document that it is complying with legislative mandates and state and federal enforcement requires. His unwillingness or refusal to issue

11

warnings or citations or to submit reports is serious because it is a requirement of his law enforcement duties. This factor weighs heavily against mitigation.

*Conclusion*

We conclude, as did the public employees relations commission, that Krieger's due process rights were not violated, the order to patrol the southern portion of his patrol zone was not vague, and his termination was consistent with fish and wildlife commission regulations and supported by competent, substantial evidence. We, therefore, affirm the public employees relations commission's final order of termination.

Affirmed.